[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15370
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cr-00013-DHB-WLB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIUS LEE GILLESPIE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 5, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Julius Lee Gillespie appeals his 36-month sentence for one count of failing to register as a sex offender in Dodge County, Georgia, in violation of 18 U.S.C. § 2250(a).[1]  On appeal, Gillespie argues that the district court erred in applying a two-level increase in his offense level for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

The following facts were established at trial.  In 1976, in the state of Washington, Defendant Gillespie was convicted of two counts of first degree rape, a "sex offense" under the Sex Offender Registration and Notification Act.  After serving a 17-year sentence, Defendant Gillespie began serving state parole. Gillespie's state parole officer, David Holbrook, reviewed and had Gillespie sign a sex offender registration form.  That form explained, inter alia, that: (1) Gillespie was required to register as a sex offender for the rest of his life unless he petitioned the court of conviction for relief from his duty to register; and (2) his failure to register would constitute a separate criminal offense.  Gillespie duly registered as a sex offender in Washington.

---

[1]Although Gillespie was released from prison on October 11, 2013, his appeal is not moot because he currently is serving a three-year supervised release term.  See United States v. Page, 69 F.3d 482, 487-88 n.4 (11th Cir. 1995) (stating that challenges to guideline enhancements were not moot where defendants were serving terms of supervised release).

In 1993, Officer Holbrook granted Gillespie's request to have his Washington parole transferred to North Carolina.  A few weeks later, however, Officer Holbrook learned that Gillespie was in Arizona, not North Carolina.  Gillespie's transfer request was rescinded, his state parole was revoked, and a warrant was issued for his arrest for absconding supervision.

In January 1994, Gillespie called Officer Holbrook, who told Gillespie that the transfer request was cancelled and that Gillespie must return to Washington immediately.  Gillespie did not return to Washington and did not register as a sex offender in any state.  Officer Holbrook explained that if Gillespie had reported to a North Carolina parole officer, the Washington parole office would have been notified, and it was not.

In 1999, Gillespie was arrested in South Carolina on the outstanding state parole warrant and was returned to Washington.  Defendant Gillespie served a 60-day sentence for violating the terms of his state parole by absconding.  Upon his release from state custody, Gillespie was given a final discharge from the Washington Indeterminate Sentence Review Board ("the Parole Board"), and his civil rights were restored.  According to Officer Holbrook, the final discharge relieved Defendant Gillespie of his state parole obligations, but it did not relieve him of his obligation to register as a sex offender.

3

Gillespie lived for a time in both North Carolina and South Carolina. By 2008, Gillespie was living in Dodge City, Georgia. Gillespie did not register in Georgia as a sex offender, although Georgia law required convicted sex offenders to do so.

In Dodge City, Gillespie worked as a maintenance man at an apartment complex. When he applied for the job, Gillespie used a false social security number. On the job application, Gillespie indicated that he had not been convicted of a crime and reported prior addresses in South Carolina, North Carolina, and Georgia, but omitted any reference to the state of Washington. Gillespie's employer performed a background check in only the states Gillespie said he had lived and did not uncover his Washington rape convictions or sex offender status.

In July 2010, Neds Wesley, a local police officer who worked as a security guard at the apartment complex, checked Gillespie's criminal history and discovered Gillespie's prior rape convictions in Washington. Officer Wesley told Diana Glass, a friend of Gillespie's, about Gillespie's prior crimes. Glass warned Defendant Gillespie that he was being accused of having done bad things. When Gillespie's employer asked him to fill out a consent form for a follow-up background check, Gillespie again wrote down false information about his social security number, prior criminal record, and past residences. Shortly afterward, however, Gillespie failed to report to work and disappeared from Dodge City.

After an investigation by Georgia law enforcement, a warrant was issued for Gillespie's arrest for failure to register as a sex offender.

In late July 2010, Glass wired Defendant Gillespie some money in South Carolina. Later that summer, Defendant Gillespie was in Elizabethtown, North Carolina, where he met Mattie McLaurin. McLaurin's neighbor introduced Defendant Gillespie to her as "Uncle Peter." By January 2011, Defendant Gillespie had moved in with McLaurin and her four children. When Defendant Gillespie began dating McLaurin's teenage daughter, McLaurin became concerned and asked for Gillespie's full name. Gillespie said his name was Julius Lamont Galespie, changing his middle name and misspelling his last name. McLaurin googled this name and discovered the Dodge City, Georgia arrest warrant. McLaurin confronted Gillespie, who denied he was the man in the warrant. A few weeks later, on March 3, 2011, U.S. Marshals arrested Gillespie at McLaurin's home.

## B.    Defendant Gillespie's Trial Testimony

At trial, Defendant Gillespie testified in his own defense. Gillespie admitted his rape convictions and that, once he was paroled, he had signed Washington's standard sex offender registration form with Officer Holbrook. Gillespie also admitted moving to North Carolina in 1993, then to South Carolina in 1996, and to Georgia in 2008.

Gillespie agreed that he had spent a few weeks in Arizona before arriving in North Carolina in 1993, but denied ever speaking to Officer Holbrook again or being told that his parole was revoked.  Further, Gillespie claimed that when he arrived in North Carolina, he spoke with a county sheriff, Steve Bunn, who told Gillespie he was not required to register as a sex offender because North Carolina did not have a sex offender registry.  Gillespie claimed to have reported once to a parole officer in North Carolina, but could not remember the parole officer's name.

Defendant Gillespie also testified that in 1999, after he was released from custody in Washington for being a parole violator, nothing was said to him about registering as a sex offender; rather, he was told he was "free to go live [his] life." Gillespie submitted into evidence his 1999 final discharge from the Parole Board. Defendant Gillespie testified that he was told that Washington State no longer had jurisdiction over him, that his rights had been restored, and that the only thing Gillespie had to do was not possess or own a firearm.  In light of these experiences, Gillespie believed he no longer needed to register as a sex offender.

Gillespie admitted living in North Carolina by the fall of 2010 and going by his nickname of Peter.  Gillespie denied living at McLaurin's home.  Instead, Gillespie contended that he merely stayed overnight at her house on four or five occasions.  Gillespie also denied dating McLaurin's daughter.

C.    **Sentencing**

6

After the jury found Gillespie guilty, the probation officer prepared a presentence investigation report ("PSI").  The PSI recommended, inter alia, that Gillespie receive a two-level increase in his offense level, pursuant to U.S.S.G. § 3C1.1, because Gillespie falsely testified during his trial that: (1) Sheriff's Deputy Bunn told him he did not need to register as a sex offender in North Carolina, (2) Gillespie never lived with McLaurin in North Carolina, and (3) Gillespie did not speak to Officer Holbrook after he left Washington.  Gillespie objected to the obstruction of justice increase, contending that the record did not establish that these statements constituted false testimony and the statements were irrelevant to the ultimate determination of his guilt.

At sentencing, Gillespie's probation officer stated that he conducted an independent investigation into the factual accuracy of each contested statement and believed that each was a material misrepresentation.  In particular, the probation officer reviewed the Washington parole records and found a notation that Officer Holbrook spoke to Gillespie and instructed him to report to Washington parole authorities by January 18, 1994.  The probation officer also called the sheriff's office in North Carolina and confirmed that Deputy Bunn was still alive and thus could have been called as a witness to support Gillespie's defense.

The district court overruled Gillespie's objection to the obstruction of justice enhancement.  The district court explained that although not every instance of

conflicting testimony creates an inference of perjury, in Gillespie's case the statements in question were so diametrically opposed to each other that there was no explanation except perjury. The district court found that it was not possible to square Gillespie's testimony with Officer Holbrook's testimony except as a knowingly false statement and that the jury obviously did not believe Gillespie. The district court further found that there was little doubt in the jury's mind that Gillespie lived with McLaurin and that the conflicting testimony between McLaurin and Gillespie was "one of the pegs upon which the jury found the verdict" and was thus material. Based on its own observation of Gillespie's demeanor at trial, the district court found that Gillespie "was a disingenuous witness who was eager to manufacture evidence if it appeared that he could do so without being caught directly and diametrically in a lie." The district court stated that Gillespie gave the testimony knowing it was false and that the false testimony was material to the issues at trial. The district court concluded that Gillespie had attempted to impede the administration of justice by providing false testimony, which warranted the two-level increase.

## II. DISCUSSION

A defendant is subject to a two-level increase in his offense level if he willfully attempts to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the offense of conviction.

U.S.S.G. § 3C1.1. The § 3C1.1 increase applies when a defendant commits perjury that "pertain[s] to conduct that forms the basis of the offense of conviction" or provides "materially false information to a judge . . . ." See id. § 3C1.1, cmt. n.4 (B), (F). Perjury is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993). Material, for purposes of § 3C1.1, means something that, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n.6. The threshold for materiality "is conspicuously low." United States v. Dedeker, 961 F.2d 164, 167 (11th Cir. 1992).[2]

Here, the factual issue at Gillespie's trial was whether his failure to register as a sex offender after moving to Dodge City, Georgia was knowing or accidental. Defendant Gillespie's credibility was crucial to the issue of his intent. Given the trial record, it was not clearly erroneous for the district court to find that Gillespie intentionally gave false testimony at trial. In addition, the district court did not err in concluding that Gillespie's false testimony satisfied the low threshold for materiality in U.S.S.G. § 3C1.1. See Dedeker, 961 F.2d at 167.

---

[2]In reviewing a district court's imposition of an obstruction of justice enhancement under § 3C1.1, we review the court's factual findings for clear error and the application of the facts to the Sentencing Guidelines de novo. United States v. Tampas, 493 F.3d 1291, 1303 (11th Cir. 2007). In so doing, we give special deference to the district court's particularized findings as to credibility or demeanor, and review them for clear error. United States v. Banks, 347 F.3d 1266, 1269 (11th Cir. 2003).

For example, at trial, the government's evidence was that Gillespie's failure to register as a sex offender in Georgia was part of a pattern of evading supervision and registration that began when Gillespie left Washington supposedly for North Carolina but went to Arizona instead. Gillespie then refused to return to Washington as instructed by his parole officer and did not face the consequences for absconding until 1999 when he was arrested in South Carolina. Thereafter, in both Georgia and North Carolina, Gillespie took steps to avoid further detection by authorities, such as lying on his Georgia job application and living under an assumed name with McLaurin in North Carolina.

Officer Holbrook testified that he told Gillespie his parole was revoked and he must return to Washington. But in his testimony, Gillespie denied talking to Holbrook and claimed he believed he no longer needed to register as a sex offender. Gillespie's false testimony was clearly material to whether Gillespie acted with intent to circumvent the sex offender registration requirements in this case. Likewise, Gillespie denied living with McLaurin in North Carolina. However, McLaurin testified that Gillespie lived with her, initially under a different name (Peter), without disclosing to her the investigation against him. Gillespie's false testimony about McLaurin also tends to show that he was trying to avoid detection of his presence in North Carolina. Thus, while these pieces of testimony did not relate directly to Gillespie's failure to register as a sex offender

10

in Dodge City, Georgia, they nonetheless "tend[ed] to influence or affect" the jury issue of whether he knew of the sex offender registration requirements and acted to circumvent them.  U.S.S.G. § 3C1.1, cmt. n.6.

Accordingly, the district court properly applied the two-level obstruction of justice increase under § 3C1.1.

**AFFIRMED.**